ORIGINAL

0 C F
C/m

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
MICHAEL DICKERSON,

          Plaintiff,

          -against-

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. CV-05-2552 (FB)

*Appearances:*
*For the Plaintiff:*
MICHAEL DICKERSON, *pro se*
883 Dumont Avenue
Brooklyn, New York 11207

*For the Defendant:*
ROSLYNN R. MAUSKOPF, ESQ.
United States Attorney
Eastern District of New York
By: KENNETH A. STAHL, ESQ.
Assistant United States Attorney
One Pierrepont Plaza, 14th Fl.
Brooklyn, New York 11201

**BLOCK, Senior District Judge:**

      Plaintiff, Michael Dickerson, ("Dickerson"), proceeding *pro se*, seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI"). The Commissioner moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Because the Administrative Law Judge ("ALJ") failed to develop a full and adequate record, the case is remanded for further proceedings.

I.

The following facts are taken from the Administrative Record ("A.R."):

On November 14, 2002, Dickerson filed an application for SSI alleging that he has been unable to work as a painter since July 2001, due to arthritis in his shoulder, multiple hernia operations and back pain. On January 6, 2003, the Commissioner denied Dickerson's application, noting that his condition had stabilized since surgery and concluding that "your condition does not prevent you from performing this work [as a painter]." A.R. at 23. On January 28, 2003, Dickerson requested a hearing before an ALJ. That hearing took place on May 12, 2004.

**A. Medical Evidence**

In September 2001, Dickerson underwent hernia repair surgery at Kings County Hospital Center. Following the surgery, Dickerson's treating physician noted that Dickerson was able to return to work, with the limitation that he could not lift objects weighing more than ten pounds. A consultative evaluation performed at the Commissioner's request confirmed that Dickerson's "abilities for strenuous activity may be limited because of the history of repair of recurrent inguinal and ventral hernias," A.R. at 113; the consulting physician also diagnosed tendinitis as a possible cause of Dickerson's shoulder pain.

At the May 12th hearing, the ALJ asked Dickerson if he had received medical treatment since filing his application in 2002; upon learning that he had, the ALJ left the administrative record open to obtain additional medical records from Dickerson's treating sources. The records subsequently obtained from Kings County Hospital Center suggest

that Dickerson suffered from chronic headaches and shortness of breath.

Regarding the headaches, a magnetic resonance image ("MRI") was taken of Dickerson's brain in May 2004. The attending physician noted that the results of the MRI were unremarkable, but recommended a computed tomography scan ("CT scan") of the sinuses. The results of the subsequent CT scan, conducted in June 2004, indicated minimal mucosal thickening. Treating physician Dr. Yang ultimately diagnosed tension headaches and prescribed medication.

Regarding the shortness of breath, another treating physician, Dr. Kamel, examined Dickerson on July 12, 2004. Although Dr. Kamel noted that Dickerson's chest exam was normal, he was unable to rule out mild asthma, panic attacks and hyperthyroidism as possible causes.

The ALJ received the evidence regarding Dickerson's headaches and shortness of breath on November 2, 2004. He did not request any additional information from treating physicians or order any additional consultative examinations.

**B. Other Evidence**

Dickerson was 45 years old at the time of the ALJ's decision, and had an 11th grade education. In his application for benefits, Dickerson asserted that he worked as a painter for four months in 2001; at the hearing, however, Dickerson testified that he only did this work in his own house. Also at the hearing, Dickerson testified that he was not able to lift objects weighing more than ten pounds, squat or fully extend his arm due to the pain those motions cause him. Dickerson further testified that he "[fell] down a lot" and "kept passing out." A.R. at 143, 150.

The ALJ also heard testimony from an impartial vocational expert for the purpose of determining whether jobs existed in significant numbers that Dickerson could perform. The ALJ posed a hypothetical to the expert, paraphrased as follows: a younger individual, left-hand dominant, with a history of persistent hernias and repair operations, who has a limitation for lifting and carrying of 10 pounds with the left arm and must avoid repetitive bending of the left arm, who cannot extend right arm all the way but otherwise has normal use of the right arm, who has a sixth or seventh grade reading level and has no past work history or skills to transfer. The vocational expert testified that such an individual could work in an unskilled sedentary occupation such as telephone order clerk or surveillance system monitor, and that both jobs existed in significant numbers in the local and national economies.

### C. The ALJ's Decision

In a written decision dated November 26, 2004, the ALJ evaluated the foregoing evidence to determine whether Dickerson was disabled. First, the ALJ found that Dickerson had not engaged in substantial gainful activity since the alleged onset of his disability.

Second, the ALJ found that Dickerson's recurrent hernias status-post repair and shoulder arthritis/tendinitis constituted severe impairments, in that "they impose at least some limits upon his ability to preform work-related activities such as lifting heavy weights." A.R. at 14. The ALJ summarized the medical evidence regarding Dickerson's headaches, but did not conclude that they constituted a severe impairment.

Third, the ALJ found that neither Dickerson's recurrent hernias status-post

repair nor his shoulder arthritis/tendinitis was a *per se* disability under the Commissioner's Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. I.

Fourth, the ALJ found that Dickerson's residual functional capacity allowed him to "engage in sedentary work but [that he] must avoid strenuous activity or repetitive bending of the left arm." A.R. at 18. In so doing, he found that "claimant's testimony [regarding his limitations] is not credible to the extent that it is construed to mean that his limitations are so severe that he cannot engage in any work activity . . . [which] is inconsistent with the objective medical evidence, treatment regimen, and the evaluations performed at lower levels of adjudication." *Id.* at 15. The ALJ further found, based on Dickerson's hearing testimony, that he had no past relevant work.

Fifth, the ALJ found that Dickerson was a younger individual with limited education and no transferable work skills. Based on these findings and the testimony of the vocational expert, the ALJ concluded that there were a significant number of jobs in the national economy that Dickerson could perform; consequently, the ALJ denied Dickerson's application for benefits.

On December 29, 2004, Dickerson sought review of the ALJ's decision with the Commissioner's Appeals Council. On March 25, 2004, the Appeals Council denied the request for review, thereby rendering final the Commissioner's decision to deny benefits.

## II.

### A. Standard of Review

"In reviewing the final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial

5

evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). The former determination requires the Court to ask, *inter alia*, whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Echevarria v. Secretary of Health & Human Servs.*, 685 F.2d 751, 755 (2d. Cir 1982) (citation and internal quotation marks omitted). The latter determination requires the Court to ask whether the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In that regard, ALJs must ensure that the crucial factors in their determinations are "set forth with sufficient specificity to enable [a court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

## B. General Legal Standards for Disability Claims

To qualify for SSI, a claimant must be disabled, that is, "[unable] to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). Under the Commissioner's regulations, an ALJ must determine whether a claimant is disabled in accordance with a well-established five-step process:

> At the first step, the agency will find non-disability unless the claimant shows that she is not working at a "substantial gainful activity"....
>
> At step two, the SSA will find non-disability unless the

6

> claimant shows that she has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"....
>
> At step three, the agency determines whether the impairment which enabled claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies....
>
> If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled....
>
> If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (citing 20 C.F.R. § 416.920(b)-(f) (now 20 C.F.R. § 416.920(a)(4)(i)-(v))); *see also Jasinski v. Barnhart*, 341 F.3d 182, 183-84 (2d Cir. 2003). The burden of persuasion rests on the claimant at steps one though four; it shifts to the Commissioner at step five. *See Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) ("If the claimant satisfies her burden of proving the requirements in the first four steps, the burden then shifts to the [Commissioner] to prove in the fifth step that the claimant is capable of working.").

## C. Duty to Develop Record

Correct application of the five-step process requires a full and complete medical record. *See* 20 C.F.R. § 416.912(d) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months

7

preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application."). It is well settled in this circuit that, in light of the essentially non-adversarial nature of a benefits proceeding, an ALJ must affirmatively develop the record if it is incomplete. *See Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999). This affirmative duty is heightened in cases involving *pro se* plaintiffs. *See Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996).

The duty to develop the record requires the Commissioner, *inter alia*, to "seek additional evidence or clarification" from the claimant's treating sources when their reports "contain[ ] a conflict or ambiguity that must be resolved." 20 C.F.R. § 416.912(e)(1). If the information obtained from the claimant's medical sources is not sufficient to make a disability determination, the Commissioner must ask the claimant to attend one or more consultative evaluations. *Id.* at § 416.912(f).

The Commissioner's regulations provide that an ALJ "will consider only impairment(s) you say you have *or* about which we receive evidence." 20 C.F.R. § 416.912(a) (emphasis added). "The disjunctive phrasing of this rule requires an ALJ to investigate the disabling effects of an impairment if the record contains evidence indicating that such an impairment might exist. *This obligation is triggered without regard to whether the claimant has alleged that particular impairment as a basis for disability.*" *Prentice v. Apfel*, 11 F. Supp. 2d 420, 426 (S.D.N.Y. 1998) (emphasis added).

### III.

The ALJ failed to develop a full and adequate administrative record. As a

result, it is possible that the ALJ's application of the five-step process led to an incorrect adjudication.

**A. Failure to Develop Record**

Dickerson's testimony regarding repeated incidents of falling down or passing out alerted the ALJ that an additional impairment might have existed. Once alerted, the ALJ's first obligation was to explore the nature and extent of Dickerson's symptoms. *See Cruz v. Sullivan*, 912 F.2d 8, 11-12 (2d Cir. 1990) (failure to satisfy duty to pro se claimant where ALJ did not probe into the severity of claimant's pain and symptoms). Instead, the ALJ responded to Dickerson's statements on one occasion by asking questions about Dickerson's scheduled MRI and, on another occasion, changing the line of inquiry entirely.

To his credit, the ALJ did wait for additional medical records before issuing his decision; the documents he received, however, compelled even further development of the administrative record. The inconclusive findings of Dr. Kamel left open the possibility of a panic attacks diagnosis, which, depending on Dickerson's symptoms, could qualify as a *per se* disability under the Commissioner's Listing of Impairments. *See* 20 C.F.R. pt. 404, subpt. P, app. I, § 12.06 (Anxiety Related Disorders). Similarly, Dr. Yang's diagnosis of tension headaches was inconclusive as to the effect those headaches had on Dickerson's ability to work. *Cf.* 20 C.F.R. § 416.921 ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.").

Under these circumstances, the governing regulations required the

9

Commissioner to seek additional information from Dickerson's treating physicians to resolve the ambiguity in the medical record and, if no such information was available, request a consultative evaluation. 20 C.F.R. §§ 416.912(e)-(f); *cf. Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996) ("Because there is nothing to indicate ... that the reports were inconclusive, the ALJ was not obligated to request further information from the doctors who had ordered the CT and MRIs."). The administrative record indicates that the Commissioner did neither.

**B. Effect on Five-Step Process**

The ALJ's step-one finding that Dickerson had not engaged in substantial gainful employment since the alleged onset of disability, as well as the step-four finding that Dickerson had no relevant past work, were both supported by substantial evidence. As these particular issues were resolved in Dickerson's favor, they do not constitute grounds for remand.

Gaps in the administrative record, however, call all of the ALJ's other findings into question. At step two, the ALJ did not have enough information to compile an exhaustive list of Dickerson's impairments. Accordingly, at step three, the ALJ could not be certain that Dickerson's impairments, considered individually or with regard to their total effect, qualified as a *per se* disability under 20 C.F.R. § 416.926(b)(3). At step four, the inadequate record limited the ALJ's ability to determine Dickerson's residual functional capacity, which in turn shaped the ALJ's finding of specific jobs that Dickerson was capable of performing.

The inadequate administrative record also calls into question the value of the

10

vocational expert's testimony and the ALJ's reliance on that testimony in step five. Substantial record evidence, as it existed at the time of the hearing, supported the assumptions posed by the ALJ, and therefore those assumptions provided a sound basis for the expert's testimony at the hearing. *See Dumas v. Scheweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983). The testimony would be entitled to less weight, however, if a more fully developed administrative record revealed that the ALJ's hypothetical did not present the full extent of Dickerson's impairments. *See De Leon v. Secretary of Health and Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984); *Lugo v. Chater*, 932 F.Supp. 497, 503-04 (S.D.N.Y. 1996).

Correct application of the five-step process depends on a full and adequate administrative record. *See* 20 C.F.R. § 416.920(a)(4)(iii) ("At the third step, we also consider the medical severity of your impairment(s)."); *id.* § 416.945(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not "severe," . . . when we assess your residual functional capacity [to be applied at steps 4 and 5]."). Without further development of the record, the Court simply cannot determine whether the ALJ's decision that Dickerson was not disabled was correct.

## IV.

For the foregoing reasons, the case is remanded for further proceedings in accordance with this Memorandum and Order. On remand, the ALJ must develop a full and adequate record with respect to Dickerson's complaints of chronic headaches, shortness of breath and repeated incidents of passing out or falling down during the period leading up to the November 26, 2004, decision to deny benefits. The ALJ must further

develop a complete list of Dickerson's medically determinable impairments, and must determine whether those impairments, considered individually as well as collectively, satisfy the criteria for a *per se* disability. Finally, the ALJ must determine (based, if necessary, on testimony from a vocational expert or other similar evidence) whether, despite all limitations, Dickerson can still perform work existing in the national economy.

**SO ORDERED.**

/s/
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
August 11, 2006